**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| **Aqua Resolutions LLC** | ) | **26-804** |
| **Debtor.** | ) | **Chapter 11 Subchapter V** |
| | ) | **Hon. Michael B. Slade** |
| | ) | **Bankruptcy Judge** |

**DEBTOR'S PLAN OF REORGANIZATION**

**DATED APRIL 16, 2026**

**BALLOT RETURN ADDRESS:** Clerk, United States Bankruptcy Court, Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois 60604

**A HEARING ON CONFIRMATION IS SCHEDULED FOR _____ IN COURTROOM \_\_\_\_\_ AT THE U.S. BANKRUPTCY COURT, 219 SOUTH DEARBORN STREET, CHICAGO, IL 60604. YOUR RIGHTS MAY BE AFFECTED BY THIS PLAN. CONSULT AN ATTORNEY.**

**Counsel for Debtor:**

David P. Leibowitz

Lakelaw (Law Offices of David P. Leibowitz, LLC)

3352 N. Sheffield Avenue

Chicago, Illinois 60657

(312) 662-5750 | dleibowitz@lakelaw.com | ARDC No. 1612271

**SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS**

Aqua Resolution LLC d/b/a Rainsoft of Chicago (the "Debtor") proposes this Plan of Reorganization (the "Plan") to restructure its debts and continue its water treatment sales and service business. The Plan provides for the following treatment of creditors:

**Secured Creditors -- Classes 1 and 1A (SBA and Pathward, N.A.) -- UNIMPAIRED**

The SBA (Class 1) and Pathward, N.A. (Class 1A) hold perfected secured claims against the Debtor's assets. Both shall be paid in full in accordance with their respective loan documents, which shall be reinstated and remain unimpaired. Both are deemed to accept the Plan and need not vote.

**Secured Claims Vehicles**

**Class 1B**      **Ally Financial –** Debtor will maintain regular payments on this vehicle, a 2018 Nissan NV. This claim is unimpaired

**Class 1C**      **Ally Financial –** Debtor will maintain regular payments on this vehicle, a 2017 Dodge ProMaster. This claim is unimpaired

**Class 1D**      **Nissan Motor Acceptance.** Debtor will surrender this vehicle, a 2020 Nissan Pathfinder and Nissan Motor Acceptance will have an unsecured claim for the deficiency. This claim is impaired

**Disputed MCA ("MCA") Claims -- Classes 2A, 2B, and 2C -- IMPAIRED**

GCM Prime LLC (Class 2A), Path 2 Capital LLC (Class 2B), and Funding Futures LLC (Class 2C) purport to hold secured claims arising from MCA agreements characterized as "purchases of future receivables." Debtor disputes their secured status. These claims are subordinate to the SBA's blanket lien and are accordingly undersecured even if allowed as secured. The Debtor will seek a court determination that these claims are unsecured. Allowed claims of these creditors will be treated as general unsecured claims under Class 3.2 and paid on the same pro rata basis as other general unsecured creditors.

**Claim of On Deck Capital Inc – Class 2D – IMPAIRED**

This claim is an undersecured claim of On Deck Capital Inc. It will be treated as a General Unsecured Creditor under the Plan

**Priority Unsecured Claims -- UNCLASSIFIED**

All allowed administrative expense claims (professional fees and Sub V Trustee fees) and all other allowed priority unsecured claims under Section 507(a) shall be paid in full at or before the Effective Date of the Plan, or as otherwise agreed.

**General Unsecured Creditors -- Classes 3.1 and 3.2 -- IMPAIRED**

Convenience class creditors with claims of $500 or less (Class 3.1) shall be paid in full on the Effective Date. General unsecured creditors (Class 3.2), including the MCA creditors to the extent their claims are allowed and treated as unsecured, shall receive a pro rata share of plan payments made pro rata after all administrative and priority claims have been paid: Months 1–12: $2,500 per month; Months 13–36: $3,500 per month; Months 37–60: $4,500 per month — a total of $222,000. Creditors whose monthly payments would be less than $1 will receive nothing.

**Equity -- Class 4 -- UNIMPAIRED**

Thomas J. Norton shall retain his 100% equity interest in the Reorganized Debtor.

## ARTICLE 1
## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

### 1.1. Nature of the Debtor's Business.

Aqua Resolution LLC, doing business as Rainsoft of Chicago, is an Illinois limited liability company engaged in the sale, installation, and service of water treatment and purification systems. Its products include residential and commercial water softeners, filtration systems, and related equipment manufactured and licensed under the Rainsoft brand. The Debtor operates from its principal place of business at 2505 S. Finley Road, Lombard, Illinois 60148, serving customers throughout the Chicago metropolitan area and surrounding suburbs. NAICS Code: 2382.

### 1.2. History of Business Operations.

Aqua Resolution LLC was organized under the laws of the State of Illinois. It has operated as a Rainsoft dealer since its organization. Revenue is generated primarily through direct sales of water treatment systems to residential customers, supplemented by service agreements and ongoing maintenance contracts. The Debtor employs approximately 20 personnel, including sales representatives, installation technicians, and administrative staff. The Debtor previously operated from 78 Eisenhower Lane North, Lombard, Illinois (2015-2022) and currently operates from 2505 S. Finley Road, Lombard, Illinois.

### 1.3. Filing of the Debtor's Chapter 11 Case.

On January 17, 2026, the Debtor filed a voluntary petition for relief under Chapter 11, Subchapter V of the Bankruptcy Code. The Chapter 11 case is pending in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division. Thomas J. Norton, Managing Member, is the sole equity holder.

### 1.4. Legal Structure and Ownership.

Aqua Resolution LLC is an Illinois limited liability company. Its sole member and Managing Member is Thomas J. Norton, who holds 100% of the equity interests. Both Thomas J. Norton and Jennifer Norton are co-obligors on the SBA debt.

### 1.5. Debtor's Assets.

Debtor's assets as of the Petition Date, as set forth in Schedule A/B (Docket No. 3), are summarized as follows:

| Asset Category | Description | Scheduled Value |
|---|---|---|
| Cash / Bank Accounts | US Bank checking (x0053); Bank of America accounts (closed) | $29,000.00 |
| Accounts Receivable | Current (90 days or less): $82,000.00; Over 90 days: $0 (written off) | $82,000.00 |
| Inventory | Ordinary course parts and equipment | $8,000.00 |
| Office Furniture & Equipment | Office furniture (old); Computers | $12,000.00 |
| Vehicles | 2018 Nissan NV ($9K); 2020 Nissan Pathfinder ($10K); 2017 Dodge ProMaster ($15K) | $34,000.00 |
| Intangibles | QuickBooks License ($500); Lead Perfection CRM ($1,000) | $1,500.00 |
| Real Property | Leased premises only -- no owned real property | $0.00 |
| TOTAL | | $166,500.00 |

### 1.6. Debtor's Liabilities.

The Debtor's principal secured creditors are the Small Business Administration (COVID EIDL loans aggregating approximately $1,060,342.63) and Pathward, N.A., with an outstanding balance of $574,403.79 as set forth its proof of claim.

Vehicle loans held by Ally Financial and Nissan Motor Acceptance Corp aggregate approximately $62,367.79.

Cash advance providers On Deck Capital Inc, Path 2 Capital LLC, GCM Prime LLC, and Funding Futures LLC, aggregating in excess of $500,000, assert secured claims, all of which the Debtor disputes as junior to the SBA's blanket lien and therefore unsecured. Debtor also disputes the amount due on various MCA claims.

General unsecured creditors (credit cards and trade) total approximately $331,287.40.

Debtor does not believe that any priority wage claims are due.

Total scheduled claims aggregate approximately $2,006,321.58, subject to amendment based on the final claims register.

### 1.7. Current and Historical Financial Conditions.

The Debtor's gross revenues from business operations:

| Period | Gross Revenue |
|---|---|
| January 1 -- January 17, 2026 (filing date) | $50,000.00 |
| Full Year 2025 | $2,929,319.00 |
| Full Year 2024 | $4,171,744.00 |

Financial projections supporting the Plan's feasibility are attached hereto as Exhibit D.

### 1.8. Events Leading to the Filing of the Bankruptcy Case.

The Debtor's financial problems stemmed from several overlapping factors. The COVID-19 pandemic severely disrupted the Debtor's sales activities. To keep operations going, the Debtor secured COVID EIDL loans from the SBA. As interest rates rose, debt-servicing costs increased significantly. The Debtor also entered into multiple MCA agreements with lenders that charged effective rates well above traditional lending rates, severely affecting cash flow. These cash flow issues made it impossible for the Debtor to meet all of its obligations at once. The Debtor filed for Chapter 11 bankruptcy protection to reorganize its debt and protect the business and its employees, customers, and legitimate creditors. Additionally, the Debtor incurred losses while attempting to sell in the Wisconsin market. This effort failed and proved costly.

### 1.9. Significant Events During the Bankruptcy Case.

During this case, the Debtor has continued its operations in the ordinary course of business. Key pending issues include:

(a) The Debtor disputes the secured status of the MCA creditors and plans to seek a court ruling that their claims are unsecured. Alternatively, even if their claims are secured, the Debtor argues they have no security due to the SBA's superior blanket lien. The Debtor also challenges the amounts of various MCA creditors' claims. Notwithstanding the foregoing, and without prejudice to its overall legal position as to other MCA lenders, Debtor has negotiated a resolution of the GCM Prime, LLC's claim.

(b) The Debtor plans to assume its month-to-month commercial lease with LM Finley Investors for the premises at 2505 S. Finley Road, Suite 130, Lombard, Illinois.

(c) The Debtor maintains a 401(k) plan (Aqua Resolutions LLC 401K Plan #029598-ADP) and will continue its employer obligations thereunder.

### 1.10. Projected Recovery of Avoidable Transfers.

The Debtor does not plan to pursue preference, fraudulent conveyance, or other avoidance actions at this time, except for potential avoidance and recharacterization claims against certain MCA creditors.

## ARTICLE 2
## THE PLAN

The Debtor's primary secured creditors — the SBA and Pathward, N.A. — will be fully paid in accordance with their existing loan agreements, which will be reinstated under the Plan. Their secured claims remain unimpaired. All other creditors claiming secured status — specifically the MCA creditors — hold claims that are either unsecured (recharacterized by law as loans rather than genuine purchases of receivables) or subordinate to the SBA's blanket lien, rendering them unsecured for Plan purposes. These claims will be treated as general unsecured claims. Priority claims, including administrative expenses, employee wages, and other allowed priority claims under Section 507(a), will be paid in full on or before the Effective Date. General unsecured creditors will share a pro-rata distribution of plan payments made pro rata after all administrative and priority claims have been paid: Months 1–12: $2,500 per month; Months 13–36: $3,500 per month; Months 37–60: $4,500 per month — totaling $222,000

### 2.1. Unclassified Claims.

Certain claims are automatically entitled to specific treatment under the Code and are not classified. They are not impaired, and their holders do not vote on the Plan.

**A. Administrative Expenses**

All Administrative Expenses shall be paid in full. Undisputed Administrative Expenses due on the Confirmation Date shall be paid on the Effective Date, or as otherwise agreed.

| Type | Estimated Amount / Treatment |
| --- | --- |
| Professional Fees -- David P. Leibowitz, Lakelaw | To be determined per application under Section 330. Paid from retainer(s) on Effective Date or as allowed by Court. Pre-petition balance: $1,738.00 listed in Schedule E/F. At present, professional fees are estimated to be $60,000 to $75,000, depending on the scope of contested objections to MCA claims. Professional expenses shall be measured and proportionate to the benefit to be achieved through the objections to MCA claims |
| Sub V Trustee Fees | To be determined per application under Section 330. Paid on Effective Date or as allowed by Court. |
| Ordinary Post-Petition Trade Debt | Paid in the ordinary course of business. |
| Administrative Tax Claims (if any) | Paid in full on or before the Effective Date. |
| Clerk's Office Fees | Paid in full on the Effective Date. |

**B. Priority Tax Claims.**

Priority Tax Claims under Section 507(a)(8) shall be paid in full with interest over a period not exceeding 5 years from the order of relief, unless otherwise agreed.

| Taxing Authority | Estimated Priority Amount | Treatment |
|---|---|---|
| Illinois Tollway | $25780.10 | Paid within 5 years of the petition date with statutory interest |
| IRS (if any administrative claim) | None known as of this date | Paid in full on or before the Effective Date |

**C. Employee Priority Wage Claims.**

Allowed priority wage claims of current and former employees under Section 507(a)(4) shall be paid in full on the Effective Date. The Debtor has listed approximately 19 current and former employees in Schedule E/F at unknown amounts. The Debtor will reconcile these claims against payroll records and pay all allowed amounts on the Effective Date.

### 2.2. Classes of Claims and Equity Interests.

**Secured Creditor CLASS 1 -- Small Business Administration -- Unimpaired**

| Class | Creditor | Claim Amount | Impairment | Treatment |
|---|---|---|---|---|
| 1 | Small Business Administration Two COVID EIDL loans: (1) ~$493,195.92 (CESC, Fort Worth, TX) (2) ~$567,146.71 (Office of General Counsel, Washington, D.C.) Total: ~$1,060,342.63 Collateral: Blanket lien on all Debtor assets; lien on the residence of Thomas J. Norton and Jennifer Norton | $1,060,342.63 (aggregate) | Unimpaired | Reinstated and paid in full per existing SBA EIDL loan documents. Monthly payments resume on the Effective Date per applicable SBA note(s)—no modification of rate, term, or collateral. SBA's blanket lien and residential lien are retained in full. SBA is deemed to accept the Plan.<br><br>Debtor will have bought this loan current by the Effective Date of the Plan |

## Secured Creditor CLASS 1A -- Pathward, N.A. SBA 7A Loan Agreement -- Impaired

| Creditor | Claim Amount | Collateral | Impairment | Treatment |
|---|---|---|---|---|
| Pathward, N.A., | $574403.79 | Debtor's inventory, equipment, and other collateral per Pathward loan documents | Impaired | Reinstated and paid per the existing Pathward loan documents. Debtor has been making monthly payments—no modification of rate, term, or collateral. Pathward's lien retained in full. Pathward is deemed to accept the Plan. Debtor will have brought this loan current as of the Effective Date with the exception of two pre-petition payments that Pathward has agreed to defer. |

## Secured Creditor CLASS 1B –Ally Financial – 2018 Nissan NV

| Creditor | Claim Amount | Collateral | Impairment | Treatment |
|---|---|---|---|---|
| Ally Financial | $15,211.00 | 2018 Nissan NV | Unimpaired | Debtor will maintain current payments on this Loan |

## Secured Creditor CLASS 1C – Ally Financial – 2017 Dodge ProMaster

| | | | | |
|---|---|---|---|---|
| Ally Financial | $22,249.01 | 2017 Dodge ProMaster | Unimpaired | Debtor will maintain current payments on this Loan |

## Secured Creditor CLASS 1D – Nissan Motor Acceptance Corp – 2020 Nissan Pathfinder

| Creditor | Claim Amount | Collateral | Impairment | Treatment |
|---|---|---|---|---|
| Nissan Motor Acceptance Corp | $24,907.78 | 2020 Nissan Pathfinder | Impaired | Debtor will surrender this vehicle, and any deficiency will be an unsecured claim. |

**CLASSES 2A, 2B, AND 2C -- MCA Creditors -- DISPUTED / IMPAIRED**

GCM Prime LLC (Class 2A), Path 2 Capital LLC (Class 2B), and Funding Futures LLC (Class 2C) each purport to hold secured claims arising from MCA agreements. The Debtor disputes these claims on the following grounds:

(i) The MCA agreements are, in economic substance, loans bearing usurious interest rates, not true purchases of future receivables. The Debtor intends to seek recharacterization of these agreements as loans, thereby rendering any purported secured status invalid.

(ii) Even if the MCA agreements generate secured claims, each is junior to the SBA's priority blanket lien on all of the Debtor's assets. As the Debtor's total assets ($166,500) are far exceeded by the SBA's secured claim alone (~$1,060,342.63), the MCA creditors are without security. For this reason, any allowed claim to which they may be entitled would be wholly unsecured.

| Class | Creditor | Scheduled Amount | Dispute Basis | Plan Treatment |
|---|---|---|---|---|
| 2A | GCM Prime LLC 515 N. Flagler Dr., Suite P-300 West Palm Beach, FL 33401 Agreement: 5/15/2025; Acct: x1740 Atty: CT Corporation (as registered agent) | $33,000.00 Contingent, Unliquidated, Disputed | Purported sale of future receipts. Purported MCA lien junior to SBA -- unsecured; transaction: may be treated as an usurious loan **Impaired** | Allowed general unsecured claim of $30,000 paid pro rata from Projected Disposable Income. No secured treatment |
| 2B | Path 2 Capital LLC 408 Broadway, Suite 6032 Albany, NY 12207 Agreement: 9/4/2025 Atty: Isaac H. Greenfield, Law Offices (Suffern, NY) | $150,210.00 Contingent, Unliquidated, Disputed Pending NY action: E2025028174 | Purported sale of future receipts. MCA lien junior to SBA -- unsecured; transaction: may be treated as an usurious loan **Impaired** | Allowed claim (if any, as determined by Court) treated as Class 3.2 general unsecured claim; paid pro rata from Projected Disposable Income—no secured treatment. |
| 2C | Funding Futures LLC 100 Merrick Rd., Suite 419E Rockville Centre, NY 11570 Atty: Berkovich & Bouskila, Guillermo Zeledon (Pomona, NY) | $76,000.00 Contingent, Unliquidated, Disputed | Purported sale of future receipts. MCA lien junior to SBA -- unsecured; transaction: may be treated as an usurious loan **Impaired** | Allowed claim (if any, as determined by Court) treated as Class 3.2 general unsecured claim; paid pro rata from Projected Disposable Income. No secured treatment. |

The Debtor reserves all rights to object to, challenge, dispute, or seek recharacterization of the MCA creditor claims. The Debtor intends to file adversary proceedings or claim objections as appropriate. Classes 2A, 2B, and 2C are impaired and may vote on the Plan to the extent allowed claims exist.

**Class 2D      The secured claim of On Deck Capital Inc.**

This claim is an undersecured claim of On Deck Capital Inc. The allowed amount of this claim will be treated as a General Unsecured Creditor under the Plan. Debtor may object to the amount of this claim.

**CLASS 3.1 -- Convenience Class (General Unsecured Claims of $500 or Less) -- UNIMPAIRED**

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| 3.1 | General unsecured claims of $500 or less, or claims reduced by election to $500 or less | Unimpaired | Paid in full in cash on the Effective Date of the Plan. |

**CLASS 3.2 -- General Unsecured Class -- IMPAIRED**

The General Unsecured Class includes all allowed general unsecured claims, including: credit card creditors (American Express, Bank of America, Capital One, Chase Card Services x3, Citibank, Citibank/Home Depot, PNC Bank, Wex Bank), On Deck Capital Inc (purported lien junior to SBA -- treated as unsecured, total ~$291,096.18), and MCA creditors in Classes 2A, 2B, and 2C to the extent their claims are allowed and treated as unsecured per the foregoing. Creditors whose monthly pro rata payments would be less than $1 shall receive nothing.

| Class | Estimated Total Unsecured Pool* | Impairment | Treatment |
|---|---|---|---|
| 3.2 | Schedule E/F Part 2 (credit cards, trade): approximately $331,287.40 On Deck Capital Inc (both claims): approximately $291,096.18 MCA creditors (Classes 2A/2B/2C if allowed): at most $259,210.00 Estimated total pool: approximately $881,593.58 (subject to claims objections, and Court determinations) | Impaired | Pro rata share of plan payments made pro rata after all administrative and priority claims have been paid: Months 1–12: $2,500/month; Months 13–36: $3,500/month; Months 37–60: $4,500/month -- total of $222,000. |

\* Subject to amendment based on final claims register, allowed claims, and outcome of claim objections and MCA recharacterization proceedings.

**CLASS 4 -- Equity Interest Holder -- UNIMPAIRED**

| Class | Holder | Interest | Impairment | Treatment |
|---|---|---|---|---|
| 4 | Thomas J. Norton 22263 Clary Sage Drive Frankfort, IL 60423 | 100% membership interest in Aqua Resolution LLC | Unimpaired | Thomas J. Norton retains his 100% equity interest in the Reorganized Debtor. He is deemed to accept the Plan. |

### 2.3. Estimated Number and Amount of Claims Objections.

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date. Anticipated objections include:

(a) GCM Prime LLC agreed as to amount of claim as $30,000 pursuant to stipulation. Debtor will assert that this claim should be treated as unsecured

(b) Path 2 Capital LLC, and Funding Futures LLC -- recharacterization of MCA agreements as loans; objection to implied interest rate as usurious, other objections owing to legality of transactions, objection to any secured characterization.

(c) On Deck Capital Inc ($226,096.18 and $65,000.00) -- Debtor does not dispute the secured characterization; Debtor may dispute the amount of the claim. Allowed claim will be treated as unsecured general claims.

### 2.4. Treatment of Executory Contracts and Unexpired Leases.

The Debtor intends to ASSUME the following executory contract:

| Counterparty | Description | Treatment |
|---|---|---|
| LM Finley Investors 2505 S. Finley Rd., Ste. 150 Lombard, IL 60148 | Commercial lease for principal place of business at 2505 S. Finley Rd., Lombard, IL 60148 (currently month-to-month) | ASSUMED on Effective Date. Cure amount (if any) paid on the Effective Date. Monthly rent ($3,300/month as of 2/1/2026. |

All other executory contracts and unexpired leases not specifically assumed are deemed rejected as of the Effective Date.

### 2.5. Means for Implementation of the Plan.

The Debtor will fund Plan payments from cash flow generated by its ongoing water treatment sales and service operations. The Debtor's financial projections (Exhibit D) demonstrate sufficient cash flow to make all Plan payments while maintaining operations. On the Effective Date, all property of the estate shall vest in the Reorganized Debtor, free and clear of all claims and interests except as provided herein.

### 2.6. Payments.

Whether the Plan is confirmed under Section 1191(a) or Section 1191(b), the Debtor shall serve as disbursing agent. The Debtor shall remit its Projected Disposable Income monthly and make distributions to creditors in accordance with this Plan. No payments will be made to any unsecured creditor until such time as all objections to claims have been resolved so as to permit the Debtor to ascertain the amount to be paid to each respective creditor pursuant to the Plan.

### 2.7. Post-Confirmation Management.

| Name | Position | Compensation |
|------|----------|--------------|
| Thomas J. Norton | Managing Member / President | $173,140/year (salary and draws per SOFA -- subject to Court approval as applicable) |

### 2.8. Tax Consequences of the Plan.

Creditors and equity interest holders concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.

### 2.9. Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan.

Debtor has provided projected financial information listed in Exhibit D attached hereto.

## ARTICLE 3
## FEASIBILITY OF PLAN

### 3.1. Ability to Initially Fund Plan.

The Debtor believes it will have sufficient cash on hand on the Effective Date to pay all claims and expenses payable on that date, including all allowed administrative expenses and all allowed priority wage claims. Tables showing cash on hand and sources thereof are attached as Exhibit C.

**3.2. Ability to Make Future Plan Payments and Operate Without Further Reorganization.**

The Debtor's financial projections show sufficient cash flow to make all Plan payments while maintaining operations. The Debtor generated $2,929,319 in gross revenue in 2025 and $4,171,744 in 2024. The Debtor is implementing operational improvements to stabilize and grow revenue. The final Plan payment under the Class 3.2 distribution is expected to be made in the 60th month after the Effective Date.

## ARTICLE 4
## LIQUIDATION ANALYSIS

The Debtor's total scheduled assets amount to $166,500. In a Chapter 7 liquidation, the SBA's secured claim of approximately $1,060,342.63 would exhaust all available assets after payment of Chapter 7 administrative expenses. As a result, no value would remain for any creditor junior to the SBA — including the MCA creditors, general unsecured creditors, or equity — in a hypothetical Chapter 7. Under this Plan, general unsecured creditors receive pro rata distributions from the Debtor's projected disposable income over 60 months — a recovery that exceeds the zero recovery they would receive in Chapter 7. Therefore, the Plan meets the "best interests of creditors" test under 11 U.S.C. Section 1129(a)(7). A liquidation analysis is attached as Exhibit B.

## ARTICLE 5
## DISCHARGE

5.1. Discharge. If the Plan is confirmed under Section 1191(a), on the Confirmation Date, the Debtor will be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the Effective Date, to the extent specified in Section 1141(d) of the Bankruptcy Code.

If the Plan is confirmed under Section 1191(b), as soon as practicable after all payments due under the Plan are completed, unless the court approves a written waiver of discharge signed by the Debtor after the order for relief, the court shall grant the Debtor a discharge of all debts specified in Section 1141(d)(1)(A) and all other debts allowed under Section 503 and provided for in this Plan, except for any debt:

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in Section 523(a).

# ARTICLE 6
# GENERAL PROVISIONS

### 6.1. Title to Assets.

If confirmed under Section 1191(a), confirmation of the Plan vests all property of the estate in the Reorganized Debtor, free and clear of all Claims and Equity Interests of Creditors, except as provided in the Plan. If confirmed under Section 1191(b), property of the estate includes all property specified in Section 541 and all property acquired by the Debtor after commencement of the case. The Debtor shall remain in possession of all property of the estate, except as otherwise provided herein.

### 6.2. Binding Effect.

The provisions of the Plan shall bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

### 6.3. Severability.

If any provision of the Plan is determined to be unenforceable, such determination shall not affect the enforceability of any other provision of the Plan.

### 6.4. Retention of Jurisdiction.

The Bankruptcy Court shall retain jurisdiction of this case with regard to: (i) making orders necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) ruling on any modification proposed under Section 1193; (iii) hearing and allowing all applications for compensation to professionals and other Administrative Expenses; (iv) resolving all issues regarding Claims objections and issues arising from assumption or rejection of executory contracts or unexpired leases; (v) adjudicating all causes of action in favor of the Debtor, including recharacterization claims against the MCA creditors, preference and fraudulent transfer causes of action; and (vi) any other matter properly within the jurisdiction of the Bankruptcy Court.

### 6.5. Captions.

The headings in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6. Modification of Plan.

The Debtor may modify the Plan at any time before confirmation pursuant to Section 1193(a). If confirmed under Section 1191(a), the Debtor may seek to modify the Plan after confirmation only if (1) the Plan has not been substantially consummated and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing. If confirmed under Section 1191(b), the Debtor may seek to modify the Plan within 3 years of

the Confirmation Date, or such longer time not to exceed 5 years as fixed by the court, upon notice and hearing.

### 6.7. Final Decree.

Once the estate has been fully administered as provided in Rule 3022, the Debtor or such other party as the Court designates shall file a motion with the Bankruptcy Court to obtain a final decree to close the case.

### 6.8. Debtor as Disbursing Agent.

The Debtor shall serve as the disbursing agent under this Plan, regardless of whether the Plan is confirmed under Section 1191(a) or Section 1191(b).

### 6.9. Default Provisions.

6.9.1  An "Event of Default" shall occur if the Reorganized Debtor fails to make any payment required under this Plan within thirty (30) days after the due date, or otherwise materially fails to perform any obligation under this Plan.

6.9.2  Before exercising any remedy, a creditor must provide written notice of the alleged default to the Reorganized Debtor and Debtor's counsel of record (the "Default Notice"), specifying the nature and amount of the alleged default. The Reorganized Debtor shall have thirty (30) days following receipt of the Default Notice to cure. If timely cured, the default shall be deemed not to have occurred.

6.9.3  Upon an uncured Event of Default, any affected creditor may seek relief in the Bankruptcy Court, including (a) a motion to modify the Plan under 11 U.S.C. § 1193 to the extent permitted by the Bankruptcy Code, or (b) such other relief as the Court deems appropriate to enforce the terms of this Plan.

6.9.4  The Bankruptcy Court retains jurisdiction over this case and the parties for the purpose of enforcing all provisions of this Plan, resolving disputes arising under or in connection with this Plan, and entering such orders as may be necessary or appropriate to carry out the purposes of this Plan.

**ARTICLE 7**
**ATTACHMENTS**

The following documents accompany the Plan:

Debtor's most recent financial statements issued before bankruptcy, annexed as Exhibit A.

Liquidation Analysis, annexed as Exhibit B.

Tables showing cash on hand as of the Effective Date and sources thereof, annexed as Exhibit C.

Financial forecast for the Debtor, annexed as Exhibit D.

Debtor's most recent post-petition Monthly Operating Report, annexed as Exhibit E.

## ARTICLE 8
## FREQUENTLY ASKED QUESTIONS

**What is Aqua Resolution LLC attempting to do in Chapter 11?**

Chapter 11 is the reorganization chapter of the Bankruptcy Code. Aqua Resolution LLC (d/b/a Rainsoft of Chicago) is restructuring its debts under this Plan to continue operating its water treatment business and to pay its creditors, to the maximum extent possible, from its ongoing cash flow.

**Why am I receiving this Plan?**

To confirm a plan of reorganization, the Bankruptcy Code requires a debtor to solicit acceptances of the proposed plan. If creditors are satisfied with the Plan and vote in favor of it, and the Bankruptcy Court confirms it, the Debtor and all creditors are bound by its terms.

**How do I determine which class I am in?**

Class 1 consists of the SBA's secured EIDL claims. Class 1A contains Pathward, N.A.'s claim. Classes 1B, 1C, and 1D constitute vehicle loan claims.

Classes 2A, 2B, and 2C consist of the disputed MCA claims.

Class 2D consists of the On Deck Capital Inc Claim

Class 3.1 consists of any general unsecured claims of $500 or less. Class 3.2 consists of all other general unsecured claims.

Class 4 consists of the equity interest of Thomas J. Norton.

**Why is confirmation important?**

If the Plan is confirmed, the Debtor and all creditors are bound by the Plan's terms. If not confirmed, the Debtor may not be able to pay creditors as proposed.

**What is necessary to confirm the Plan?**

Confirmation requires, among other things, the vote of two-thirds in total dollar amount and a majority in the number of claims actually voting in each impaired voting class. If insufficient votes are received, the Court can still confirm the Plan if it finds the Plan does not discriminate unfairly and is fair and equitable with respect to each non-accepting impaired class.

**Am I entitled to vote on the Plan?**

Only creditors in impaired classes (Classes 2A, 2B, 2C, and 3.2) are entitled to vote. Unimpaired classes (Classes 1, 1A, 1B, 1C, 3.1, and 4) are deemed to accept the Plan and need not vote.

**When is my ballot due?**

Ballots must be returned by _____. Ballots should be mailed to: Clerk, United States Bankruptcy Court, Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois 60604.

**How do I determine when and how much I will be paid?**

The Debtor has provided both written and financial summaries of anticipated distributions to each class of creditors in this Plan and in the attached financial projections (Exhibit D).

## ARTICLE 9
## DEFINITIONS

**9.1.** The definitions in Sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow are for convenience of reference only and are superseded by the definitions found in the Code.

**9.2.** Administrative Claimant: Any person entitled to payment of an Administrative Expense.

**9.3.** Administrative Convenience Class: A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4.** Administrative Expense: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) and allowed under Section 503(b), including without limitation any actual and necessary expenses of preserving the estate, post-petition expenses of the Debtor-in-Possession, allowances of compensation or reimbursement of expenses approved by the Bankruptcy Court, the allowed claim of the Sub V Trustee for fees and/or reimbursements, and any fees or charges assessed under Chapter 123, Title 28, United States Code.

**9.5.** Administrative Tax Claim: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6.** Allowed Claim: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) no party in interest timely files an objection, or (ii) it is allowed by a Final Order.

**9.7.** Allowed Priority Tax Claim: A Priority Tax Claim to the extent that it is an Allowed Claim, reduced by any offsets, credits, or refunds to which the Debtor is entitled on the Confirmation Date.

**9.8.** Allowed Secured Claim: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under Section 506 of the Code.

**9.9.** Allowed Unsecured Claim: An Unsecured Claim to the extent it is an Allowed Claim, reduced by any offsets, credits, or refunds to which the Debtor is entitled on the Confirmation Date.

**9.10.** Bankruptcy Code or Code: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11.** Bankruptcy Court: The United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

**9.12.** Bankruptcy Rules: The Federal Rules of Bankruptcy Procedure.

**9.13.** Cash: Cash, cash equivalents, and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks, and commercial paper of any entity, including interest accrued or earned thereon.

**9.14.** Chapter 11 Case: This case under chapter 11 of the Bankruptcy Code in which Aqua Resolution LLC d/b/a Rainsoft of Chicago is the Debtor-in-Possession.

**9.15.** Claim: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. Section 101(5).

**9.16.** Class: A category of holders of claims or interests that are substantially similar to the other claims or interests in such class.

**9.17.** Confirmation: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.18.** Confirmation Date: The date upon which the Bankruptcy Court enters the Confirmation Order.

**9.19.** Confirmation Hearing: The hearing to be held to consider confirmation of the Plan.

**9.20.** Confirmation Order: An order of the Bankruptcy Court or any amendment thereto confirming the Plan.

**9.21.** Creditor: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.22.** Debtor and Debtor-in-Possession: Aqua Resolution LLC d/b/a Rainsoft of Chicago, the debtor-in-possession in this Chapter 11 Case.

**9.23.** Disputed Claim: Any claim against the Debtor that the Debtor has in any way objected to, challenged, or otherwise disputed.

**9.24.** Distributions: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25.** Effective Date: The Effective Date of the Plan is 30 days after entry of the order confirming the Plan, unless the Confirmation Order provides otherwise.

**9.26.** Equity Interest: Thomas J. Norton's 100% membership interest in Aqua Resolution LLC.

**9.27.** Executory Contracts: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.28.** Final Order: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified, or amended, and as to which (a) any appeal taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.29.** IRC: The Internal Revenue Code.

**9.30.** MCA (MCA) Creditors: GCM Prime LLC, Path 2 Capital LLC, and Funding Futures LLC, each of which purports to hold a secured claim arising from an MCA agreement, which the Debtor disputes and asserts should be recharacterized as a loan and/or treated as entirely unsecured.

**9.31.** Petition Date: January 17, 2026, the date the Chapter 11 petition for relief was filed.

**9.32.** Plan: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.33.** Priority Tax Claim: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.34.** Projected Disposable Income: The net monthly income of the Debtor available for distribution to general unsecured creditors after payment of all operating expenses, secured debt service (Classes 1 and 1A), and priority claims, as projected in Exhibit D. Amounts: Months 1–12: $2,500 per month; Months 13–36: $3,500 per month; Months 37–60: $4,500 per month.

**9.35.** Reorganized Debtor: Aqua Resolution LLC after the Effective Date.

**9.36.** Schedules: Schedules and Statement of Financial Affairs filed by the Debtor with the Bankruptcy Court, as amended.

**9.37.** Secured Creditor: Any creditor that holds a Claim secured by property of the Debtor.

**9.38.** Sub V Trustee: The trustee appointed pursuant to 11 U.S.C. Section 1183(a), whose duties are prescribed under 11 U.S.C. Section 1183(b), this Plan, and the Confirmation Order.

**9.39.** Unsecured Creditor: Any Creditor that holds a Claim in this Chapter 11 Case which is not a Secured Claim.

## SIGNATURE PAGE

Respectfully submitted,

**DEBTOR:**

Aqua Resolution LLC d/b/a Rainsoft of Chicago

By: _____ Date: _____

Thomas J. Norton, Managing Member

By: /s/ David P. Leibowitz
David P. Leibowitz, Counsel for Debtor
Lakelaw (Law Offices of David P. Leibowitz, LLC)
3352 N. Sheffield Avenue, Chicago, Illinois 60657
(312) 662-5750 | dleibowitz@lakelaw.com | ARDC No. 1612271

Dated: _____